**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

ARTHUR HERNANDEZ, individually and on
behalf of others similarly situated,

                Plaintiff,

    v.

COUNTER BRANDS, LLC d/b/a
Beautycounter,

                Defendant.

**Case No. 9:22-cv-81450-DMM-WM**

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## I.   <u>INTRODUCTION</u>

In his threadbare Complaint (*see* Dkt. 1), Plaintiff alleges, in a conclusory fashion and without any factual support, that Counter Brands, LLC d/b/a Beautycounter ("Beautycounter") violated the federal Telephone Consumer Protection Act ("TCPA") and two Florida state analog statutes: the recently-amended Florida Telephone Solicitation Act ("FTSA") and the Florida Telemarketing Act ("FTA"). These claims rest squarely on ill-described text messages allegedly sent to Plaintiff's cellphone without his consent by someone using either: (a) an "automatic telephone dialing system" (a.k.a. "ATDS") as defined by the TCPA (*i.e.,* Counts I and II); or (b) an "automated system for the selection or dialing of telephone numbers" in purported violation of the FTSA—a term which, unlike its federal counterpart, has no definition in the statute itself or a commonly-accepted interpretation in the courts (*i.e.*, Count III). However, Plaintiff does not articulate any theory of liability for his unnumbered FTA count, which seemingly was tacked on as an afterthought. In any event, merely regurgitating the legal elements of a cause of action without supporting facts, like Plaintiff did here, does not satisfy federal pleadings standards and cannot survive dismissal under the Federal Rules in this, or any, case. Thus, the Court should dismiss the entire Complaint for at least the following reasons:

<u>First</u>, as a threshold matter, the entire Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction because Plaintiff does not allege facts demonstrating all the requisite elements for standing under Article III of the U.S. Constitution, consistent with Eleventh Circuit's holding in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019).

<u>Second</u>, the entire Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(6), as Plaintiff fails to state a claim for relief under the invoked statutes or to plead sufficient facts supporting such claims. With respect to Counts I and II, it is well settled that, to state *any* TCPA claim and avoid dismissal, Plaintiff must first allege sufficient, specific non-conclusory facts supporting a plausible inference that Beautycounter: (i) itself, and not an unidentified third party, took the steps necessary to "physically" send the text messages at issue, as is required to plead direct TCPA liability; or (ii) had an agency relationship with or "control" over any third party that did, as is required to plead vicarious TCPA liability. Plaintiff failed to do so. Courts in this Circuit and elsewhere routinely dismiss such bald TCPA claims at the pleadings stage in their <u>entirety</u> on these bases <u>alone</u>. This Court should too.

<u>Third</u>, Counts I and II should also be dismissed under Rule 12(b)(6) because Plaintiff does not plead any facts suggesting a device fitting the TCPA's definition of an ATDS was used in this case. Indeed, Plaintiff merely parrots the statutory language without factual support, which is woefully

insufficient to allege any claim in federal court, let alone a plausible TCPA ATDS claim. Further, Plaintiff's request for treble damages in Count II—which is technically not a standalone claim but merely an available remedy under the statute—should be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff pleads no facts suggesting a "knowing" or "willful" violation occurred.

**Fourth**, Plaintiff's FTSA claim in Count III, while equally devoid of factual support and thus ripe for dismissal for that reason alone, suffers from an incurable flaw—*i.e.*, Section 8(a) of the FTSA[1] is ***facially unconstitutional*** on several levels. Specifically, Section 8(a) violates: (1) the dormant Commerce Clause of the U.S. Constitution because it has the practical effect of regulating commerce occurring wholly outside of Florida; (2) the due process clause of the Fifth Amendment to the U.S. Constitution and Florida's equivalent protections because it is unconstitutionally vague is several ways; and/or (3) the First Amendment to the U.S. Constitution and Florida's coextensive protections because it represents an unconstitutional content-based speech restriction that cannot survive strict (or intermediate) scrutiny review. Any one of these defects is fatal to Count III under Rule 12(b)(6).

**Fifth**, beyond its multiple unconstitutional infirmities, Count III should also be dismissed under Rule 12(b)(6) because Plaintiff does not plead any facts supporting an inference that a FTSA-prohibited "automated system" was used to send the alleged texts, let alone that Beautycounter did so, and relies instead on bald conclusions and speculation, which is insufficient. A district court in this Circuit recently dismissed a similarly-defective FTSA complaint on this basis. *See Davis v. Coast Dental Servs., LLC*, 2022 WL 4217141, at *2 (M.D. Fla. Sept. 13, 2022). This Court should too here.

**Lastly**, Plaintiff fail to articulate any theory of liability for his FTA unnumbered count.

## II.  SUMMARY OF PLAINTIFF'S ASSERTED CLAIMS

In Counts I and II of the Complaint (*see* ¶¶ 55-66), Plaintiff seeks relief under Section 227(b) of the TCPA, which prohibits "mak[ing] any call" to a cell phone using an ATDS (or using "an artificial or prerecorded voice," which does not apply to text messages[2]) without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2). In other words, to avoid dismissal for the alleged texts here, Plaintiff must plausibly allege that: (1) Beautycounter called his cellular telephone number; (2) without his prior "express consent"; (3) using an ATDS (sometimes called an "autodialer"). *See, e.g., Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308 (S.D.

---

[1] *See* Fla. Stat. § 501.059(8)(a), hereafter referred to as "Section 8(a)" unless otherwise specified.

[2] *See, e.g., Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, at *6 (C.D. Cal. Jan. 28, 2022) (holding that "text messages do not constitute a 'voice' under the TCPA" for a Section 227(b) claim).

Fla. 2016); *see also Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at *3 (S.D. Fla. Mar. 27, 2018) (recognizing texts qualify as "calls" under the TCPA).[3] An ATDS is expressly defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator [or "ROSNG"]; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

In Count III of the Complaint (*see* ¶¶ 67-72), Plaintiff seeks relief under Section 8(a) of the FTSA, which was recently amended and has since spawned a new cottage industry of FTSA class actions being filed in this State by opportunistic plaintiffs. In particular, on June 28, 2021, Florida Senate Bill 1120, which amended the FTSA to add various new requirements relating to the use of an "automated system" to make "telephonic sales calls" to consumers, including certain written consent requirements and a private right of action, was presented to the Governor, who signed it into law on June 29, 2021. On July 1, 2021, those amendments took effect, providing in pertinent part that "[a] person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers … without the prior express written consent of the called party" and, like the TCPA, allowing for statutory and treble damages. Fla. Stat. §§ 501.059(8)(a) & (10). "Telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." *Id.* § (1)(j). Critically, the statute does <u>not</u> define the phrase "an automated system for the selection or dialing of telephone numbers," among other key definitional omissions.

Lastly, in an unnumbered count (*see* ¶¶ 73-76), Plaintiff seeks relief under the Florida Telemarketing Act, Fla. Stat. § 501.601, *et seq.* While the FTA does prohibit certain "Unlawful Acts and Practices" by telemarketers (*see* § 501.616), Plaintiff does not articulate a theory of FTA liability.

## III.   <u>APPLICABLE LEGAL STANDARDS OF REVIEW</u>

Rule 12(b)(1) provides that a complaint is properly dismissed where there is a lack of federal subject matter jurisdiction. *See, e.g., Elend v. Basham,* 471 F.3d 1199, 1205, 1208 (11th Cir. 2006). Article III of the U.S. Constitution confers on the federal judiciary the power to adjudicate only certain cases and controversies. To establish Article III standing and avoid dismissal on this basis, Plaintiff must plausibly allege that: (i) he suffered a concrete and particularized "injury in fact," (ii) there is a

---

[3] Autodialed calls or texts that constitute telemarketing or an advertisement require prior express <u>written</u> consent. *See, e.g.*, *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1094 (N.D. Cal. 2015).

causal connection between his injury and the conduct complained of (*i.e.*, causation or "traceability"), and (iii) his injury must be capable of being redressed by a favorable decision (*i.e.*, "redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As the party invoking federal jurisdiction here, Plaintiff "bears the burden of establishing [all of] these elements." *Id.* at 561.

Rule 12(b)(6) provides for dismissal where a plaintiff fails to plead a claim for relief. A "formulaic recitation of the elements" fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "bare assertion" and "conclusory allegation[s]" also will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element of his [] claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). But "[c]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012). Where (as here) a statute upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is appropriate. *See Harris v. Mex. Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009).

## IV.   ARGUMENT

### A.   Entire Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Article III Standing.

As a threshold matter, the Complaint should be dismissed under Rule 12(b)(1) because Plaintiff does not satisfy any of the requisite elements for Article III standing for multiple reasons:

In *Salcedo*, the Eleventh Circuit could not have been more clear: "[t]o establish standing, an injury in fact must be concrete." 936 F.3d at 1167. A concrete injury must actually exist, "as opposed to being hypothetical or speculative." *Id.* This depends "on the qualitative nature of the injury, regardless of how small the injury may be[,]" rather than the number of communications received. *Id.* at 1172. Thus, mere wasted time, the unavailability of a phone for personal use during the time the text message was being received, and intrusion upon his privacy are not sufficient harms to constitute an injury-in-fact under Article III. *Id.* at 1167, 1172. Courts have consistently apply this qualitative approach to standing under both the TCPA and FTSA. *See, e.g., Frater v. Lend Smart Mortg.,* LLC, 2022 WL 4483753, at *3 (S.D. Fla. Sept. 27, 2022) (no Article III standing where Plaintiff received two texts and only harm alleged was being "bombarded" by texts, "annoyance", "aggravation" and "wasted time."); *Eldridge v. Pet Supermarket Inc.,* 446 F. Supp. 3d 1063, 1069 (S.D. Fla. 2020) (dismissing on this basis where the plaintiff failed to allege a concrete injury from receipt of five texts).

Here, Plaintiff alleges that his receipt of at least four text messages caused him "actual harm,

including invasion of privacy, aggravation, annoying, intrusion on seclusion, trespass, and conversion[,]" and "also inconvenienced Plaintiff and caused disruption to his daily life." Dkt. 1, ¶¶ 41, 42. However, these allegations are precisely the kind that the Eleventh Circuit in *Salcedo* found did not constitute an injury in fact. *See* 936 F.3d at 1171. Moreover, the only other injury Plaintiff claims to have suffered is that "Defendant's text messages took up memory on Plaintiff's cellular phone" and in that regard, asserts "[t]he cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up." Dkt. 1, ¶ 43. In other words, Plaintiff does not allege that the receipt of texts at-issue ***actually*** rendered his phone unusable, but that ***if*** he continues to receive texts there is a "risk" that his phone ***may*** "ultimately" become unusable for want of memory. *See id.*. These allegations fail because, again, to be concrete, an injury must not be "hypothetical or speculative." *Salcedo*, 36 F.3d at 1167. In short, Plaintiff's contention that his phone may become unusable in the future is precisely the kind of hypothetical and speculative harm that does not amount to a concrete injury in fact. *See id.*

Additionally, courts have held that where a plaintiff fails to allege sufficient plausible facts supporting direct or vicarious liability under the TCPA, he or she also fails to meet the requisite Article III causation and redressability elements. *See, e.g., Hicks v. Alarm.com,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (holding "[b]ased on the deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing); *Barker v. Sunrun Inc.,* 2019 WL 1983291, at *3 (D.N.M. Apr. 29, 2019) (ruling similarly). As shown in the next section, Plaintiff fails to plead such facts for his TCPA and his state law claims. Therefore, Plaintiff fails to meet all three Article III standing elements, which further supports dismissal under Rule 12(b)(1).

**B.**   **Counts I and II Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Allege Facts Supporting a Claim Under Section 227(b) of the TCPA.**

As demonstrated below, Plaintiff's TCPA claim in Counts I and II is fatally deficient under federal pleading standards and cannot survive dismissal under Rule 12(b)(6) for several reasons:

**1.**   **Plaintiff Fails to Plausibly Allege Direct TCPA Liability.**

To begin, Plaintiff's TCPA claim fails because he does not plead sufficient non-conclusory facts supporting a plausible theory of TCPA liability. To be liable under the TCPA, "the person must either (1) ***directly make*** the call, or (2) have an ***agency relationship*** with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4,

2018)).[4] As to the former, direct TCPA liability applies <u>only</u> to persons or entities that "initiate" telemarketing calls, and "initiate" in this context means to "physically place" a phone call. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)); *accord Grant v. Regal Auto. Grp., Inc.*, 2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020), *report and rec. adopted*, 2020 WL 8224838 (Sept. 29, 2020).

Thus, federal district courts have routinely dismissed direct TCPA liability claims at the pleadings stage that, like Plaintiff's, lack sufficient factual allegations demonstrating the defendant actually "initiated" the calls at issue in the sense of "***tak[ing] the steps necessary to physically place" a call***. *Sheski*, 2020 WL 2474421, at *2-4 (dismissing where the plaintiff did not allege facts supporting direct liability) (emphasis added) (quoting *In re Dish Network, LLC*, 28 FCC Rcd. at 6583 ¶ 26). "Merely alleging that [a defendant] 'made' or 'initiated' [a] call"—which is <u>all</u> Plaintiff does here at best—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Carson v. Home Depot, Inc.,* 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (dismissing ***with prejudice*** on direct liability grounds where the defendant itself did not send the at-issue text messages).

Here, Plaintiff alleges no facts which would nudge his claim that Beautycounter itself was responsible for physically sending texts at issue from possible to plausible. Rather, Plaintiff concludes that, on various days, he "received a text from Defendant" or "Defendant sent Plaintiff a text[.]" Dkt. 1, ¶¶ 33–37. But he does <u>not</u> allege, for example: (i) the phone number from which he received these texts, (ii) any basis for his conclusion that the texts originated from numbers belonging to Beautycounter or that they are even associated with Beautycounter; or (iii) that the sender of the texts identified themselves as being an employee of Beautycounter. *Id*. Courts regularly dismiss TCPA complaints where, as here, plaintiffs fail to allege adequate facts demonstrating that a defendant was responsible for directly (*i.e.*, ***physically***) placing the calls or texts at issue. *See, e.g.*, *Hirsch v. Lyndon S. Ins. Co.,* 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.,* 2019

---

[4] The FTSA and FTA also contemplate a defendant's direct and vicarious liability. *See* Fla. Stat. § 501.059(8)(a) ("A person may not make or knowingly ***allow*** a telephonic sales call ***to be made*** [by someone else] if such call involves an automated system…."); § 501.603(2) ("'Commercial telephone seller' means a person who engages in commercial telephone solicitation on ***his or her own behalf or through salespersons***."); § 501.603(11) ("'Salesperson' means any individual employed, appointed, or authorized by a commercial telephone seller, regardless of whether the commercial telephone seller refers to the individual as an agent, representative, or independent contractor, ***who attempts to solicit or solicits a sale on behalf of the commercial telephone seller***.") (all emphases added).

WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without alleging who made the calls"); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where plaintiff "provide[d] no details specifying how [plaintiff] knew that [defendant] in fact placed these calls" and holding that "[a]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" at issue) (citing *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (dismissing on this basis and holding that "[t]he mere conclusion that the [ATDS] responsible for the call belonged to [d]efendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that [d]efendant 'made,' or 'physically placed' the call to [p]laintiff's cell phone"). This Court should reach the same conclusion here.

Plaintiff may argue that simply referencing Beautycounter's products in the at-issue texts is sufficient to plead direct TCPA liability. Not so. It is well-accepted that merely offering a defendant's goods or services for sale or mentioning its name on a call or in a text does not mean the defendant itself physically initiated those calls or texts for direct TCPA liability, standing alone. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing, holding that: "Initiation [for direct liability] occurs when the defendant physically places the calls or is 'so involved in' their placement that it essentially made them itself. [] [A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citing, *inter alia*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) (internal punctuation omitted)); *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("The FCC recognizes that merely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product"); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *1-5 (N.D. Cal. Mar. 28, 2018) (finding no direct TCPA liability even though texts identified defendant and included link to defendant's website); *Scruggs*, 2020 WL 9348208, at *7-10 (conclusory allegations the caller stated he/she was "associated with" defendant and identified the defendant by name was insufficient to plead direct <u>or</u> vicarious TCPA liability). In short, a text merely saying "Beautycounter" or selling its products is of no moment and does not support direct liability.

In sum, Plaintiff's conclusory allegations fall far short of satisfying federal pleading standards. Because he does not plausibly allege that Beautycounter itself (and not some third party) actually

physically made the calls at issue, this Court should follow the vast weight of applicable authority cited above holding that such deficient claims should be dismissed under Rule 12(b)(6), and do so here.

### 2.   Plaintiff Fails to Plausibly Allege Vicarious TCPA Liability.

The Complaint also fails to plausibly allege vicarious liability under the TCPA. Vicarious liability cannot be casually pled; rather, courts uniformly require plaintiffs to meet a certain pleading threshold. Indeed, vicarious liability in any context requires a special consensual relationship between a principal and an agent. *See* Restatement (3d) of Agency ("Restatement") § 1.01, cmt. c ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."); *see also Green v. U.S.*, 700 F. Supp. 2d 1280, 1301 (M.D. Fla. 2010), *aff'd*, 418 F. App'x 862 (11th Cir. 2011) (applying Restatement § 1.01). This requires "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (citation omitted).

Applying these principles, courts routinely dismiss TCPA claims premised on vicarious liability at the pleadings stage where, as here, the plaintiff fails to allege sufficient facts establishing an agency relationship with or control over a purported agent. *See, e.g., Hirsch*, 2019 WL 5110622, at *6 (holding the FCC "has explicitly rejected a theory of liability under the TCPA against the seller of a product for telephone calls marketing that product absent an agency or similar relationship between the seller and the caller"); *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where "allegations of vicarious liability [we]re conclusory in nature").[5]

Dismissal of Counts I and II is also warranted on this basis. The only relevant allegation that even touch on Beautycounter's control of some "agent" for vicarious liability is that "Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to send text messages to the cellular telephones of Plaintiff and the other members

---

[5] *See also In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W.Va. 2016), *aff'd sub nom.* 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency, the plaintiff must show that the defendant controlled or had the right to control the purported agent and, ***more specifically, the manner and means of the solicitation campaign that was conducted***.") (emphasis added).

of the Class defined below." Dkt. 1, ¶ 57. But Plaintiff does <u>not</u> allege <u>any</u> facts supporting a plausible inference that Beautycounter directed or controlled these third parties' conduct, as is required to plead actual agency. *See, e.g., Linlor*, 2017 WL 5885671, at *3. Nor does Plaintiff allege that Beautycounter did or said anything to him, or that he relied on such actions or statements to his detriment, as is required to plead apparent authority. *Id*. Therefore, to the extent he was attempting to allege vicarious TCPA liability (and as he does not sufficiently alleges direct liability), Counts I and II should also be dismissed pursuant to Rule 12(b)(6) for this reason, as well. *See, e.g., Abramson* and *Hirsch, supra*.[6]

### 3.        Plaintiff Fails to Allege Any Facts Suggesting ATDS Use.

Plaintiff's TCPA claims in Counts I and II further fail because the Complaint is devoid of facts supporting Plaintiff's ATDS allegations. On this front, the Supreme Court's recent decision in *Facebook v. Duguid* held that: (i) the TCPA "requires that in ***all cases***, whether storing or producing numbers to be called, ***the equipment in question must use a random or sequential number generator***"; and (ii) a ROSNG is ***"a necessary feature" of any ATDS***. 141 S. Ct. 1163, 1170, 1173 (2021) (emphasis added). *See also Anyaebunam v. ARS Account Resolution, LLC, et al*., 2021 WL 4775146, at *3 (D.N.J. Oct. 13, 2021) ("The use of such a device is ***essential*** to a TCPA claim.") (emphasis added). Thus, the majority of district courts in and beyond the Eleventh Circuit applying *Facebook*—including in this District—have dismissed conclusory ATDS claims at the pleadings stage that, like Plaintiff's, lack facts supporting an inference that a ROSNG was ***actually used*** to place the at-issue calls. *See, e.g., Evans v. Ocwen Loan Servicing, LLC*, 2021 WL 7366534, at *2 (S.D. Fla. Oct. 21, 2021) (granting motion to dismiss ATDS claim with prejudice where plaintiff did "not allege that the Defendant's dialer machine ***creates*** numbers to be called using a random number generator.") (emphasis in original); *Eggleston*, 2022 WL 886094, at *3-4 (ruling similarly, and collecting cases).[7]

As applied here, the Complaint contains no factual details supporting Plaintiff's conclusion that an ATDS was involved in sending the alleged texts. *See, e.g.,* Dkt. 1, ¶¶ 33–38. Rather, Plaintiff's

---

[6] As the FTSA and FTA also contemplate a defendant's direct and vicarious liability (*see* fn. 4, *supra*), and given the dearth of binding (or even persuasive) Florida case law on those two statutes, this Court should apply closely-analogous federal TCPA authorities here and likewise dismiss Plaintiff's FTSA and FTA claims in their entirety on these same bases, as well. *See also Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So.2d 613, 615 (Fla. 3d DCA 2001) ("Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones.") (citations omitted).

[7] *See also Perrong v. MLA Int'l, Inc.*, 2021 WL 3036462, at *2 (M.D. Fla. July 2, 2021) (applying Facebook and denying motion for default judgment due to failure to state an ATDS claim where plaintiff "fail[ed] to allege 'the random nature of the automation device.'")

allegations on this front simply parrot the statutory language (*see, e.g., id.* ¶¶ 47, 57, 59, 70, 71), which has <u>never</u> sufficed to state a plausible ATDS claim in the Eleventh Circuit—even before *Facebook*. *See, e.g., Padilla v. Whetstone Partners, LLC,* 2014 WL 3418490, at *2 (S.D. Fla. 2014) (dismissing where plaintiff "fail[ed] to explain the circumstances that suggest Defendant used" an ATDS); *Mesa v. Am. Express Educ. Assurance Co.*, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017) (dismissing where plaintiff pleaded insufficient facts supporting ATDS allegations); *Turizo v. Jiffy Lube Int'l, Inc.*, 2019 WL 4737696, at *3 (S.D. Fla. Sept. 27, 2019) (allegations merely "echoing statutory language defining an ATDS" are insufficient to allege ATDS use). At best, Plaintiff merely alleges, in a conclusory fashion, that Beautycounter "used equipment having the capacity to dial numbers without human intervention to send text messages[.]" *Id.* ¶ 57. But the "capacity" to dial without human intervention is <u>not</u> the touchstone of an ATDS after *Facebook*. And as the authorities above show, a plaintiff cannot just speculate on ROSNG use without providing supporting ***facts***. Since Plaintiff does not allege any such facts in his Complaint, Counts I and II must be dismissed on this basis, as well.

4.      **Plaintiff Fails to Allege Facts Suggesting a Knowing or Willful Violation.**

Plaintiff's separate Count II, which seeks treble damages for a purported "Knowing and/or Willful Violation of the TCPA" based on the same deficient ATDS allegations in Count I (*see* Dkt. 1, ¶¶ 62-66), must be dismissed for the simple reason that Plaintiff's allegations in this regard—as to the TCPA as well as the FTSA—are entirely conclusory and unsupported with facts (*see, e.g.,* Dkt. 1 ¶¶ 60, 63-65, 71). Such bald allegations plainly do not meet federal pleading standards and should be dismissed under Rule 12(b)(6), as well. *See, e.g., Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for willful/knowing TCPA violations on this basis).

C.      <u>Count III Should Be Dismissed Under Rule 12(b)(6) Because Section 8(a) of the FTSA Is Facially Unconstitutional for Several Reasons.</u>

Initially, Count III fails because Section 8(a) is facially unconstitutional on multiple levels.

1.      **Section 8(a) Violates the Dormant Commerce Clause.**

"The Commerce Clause grants to Congress the power to regulate interstate and foreign commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (citing U.S. Const. art. I, § 8, cl. 3). "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). In considering whether a law violates the Clause, the Court must consider (1) whether the state law "directly regulates or discriminates against interstate commerce, or has the effect of favoring in-state economic interests,"

and (ii) whether the state law "unduly burden[s] interstate commerce." *Fla. Transp.,* 703 F.3d at 1243–44. Moreover, a state's power to enact legislation is limited and "[a]ny attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982). Thus, "[s]tatutes that have the practical effect of controlling conduct beyond the boundaries of the state [like the FTSA] are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech Sys., Inc. v. McCollum*, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (citing *Healy*).

    *McCollum* is instructive. There, a Florida statute prohibiting persons from causing false caller ID information to be displayed to call recipients "had the practical effect of regulating commerce that occur[red] wholly outside the state of Florida" and violated the Commerce Clause because it "[wa]s impossible for [the callers] to determine whether the recipient of a call [wa]s in Florida" and "[t]he logical consequence of this impossibility [wa]s that [the callers] [we]re unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id.* at *8. Other courts have ruled similarly when striking down analogous state call statutes.[8]

    The same logical consequence follows from the FTSA, which defines "telephone solicitor" as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, ***doing business in this state***, who makes or causes to be made a telephonic sales call." Fla. Stat. § 501.059(1)(i) (emphasis added). "Doing business in this state" includes "businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida." *Id.* § (1)(e). There is also a rebuttable presumption that a call "made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." *Id.* § (8)(d).

    Applying *McCollum* to the FTSA, "the increased use of mobile phones and call forwarding" makes it impossible for callers to be certain that the party they are calling is not located in Florida. 2009 WL 10626585, at *2. For example, a business located in California might place a "telephonic sales call" using an "automated system" to a phone number with a New York area code, but the recipient may be located or reside in Florida. That business would be liable for violating the FTSA

---

[8] *See, e.g., also Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14-16 (W.D. Wash. Mar. 30, 2015) (declining to certify class under Washington statute for similar reasons); *SpoofCard, LLC v. Burgum*, 499 F. Supp. 3d 647, 656 (D.N.D. 2020) (finding state anti-spoofing calling statute violated the dormant Commerce Clause because it was impossible to determine the location of the recipient); *Re Tech Sys., Inc. v. Barbour*, 866 F. Supp. 2d 571, 577 (S.D. Miss. 2011), *aff'd sub nom.* 702 F.3d 232 (5th Cir. 2012) (striking similar state anti-spoofing law for similar reasons on this basis).

even if it had no way of determining the recipient's actual location or residence. *Id*. at *8. Similarly, because the FTSA presumes all calls to Florida area codes are made to Florida residents or individuals located in-state, businesses must presume <u>all</u> calls to Florida area codes are subject to the FTSA, even if the recipient might actually receive the call or even live in another state. Consequently, the FTSA makes it impossible for businesses to make sales calls to consumers anywhere in the country without risk of liability under this Florida statute, effectively requiring those businesses to comply with the FTSA for <u>all</u> such calls <u>everywhere</u>, which undoubtedly violates the dormant Commerce Clause.[9]

In fact, the Florida legislature itself predicted this potential extra-territorial consequence when recently amending Section 8(a) as well, but did nothing to correct it. *See* Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 (hereafter "FIS") at 10, available at https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF (last visited Dec. 5, 2022) (citing *McCollum* and noting: "It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that has the practical effect of regulating commerce outside of Florida's borders."). Unfortunately, this prediction came true—the FTSA violates the Commerce Clause, thus warranting dismissal of Count III. *See McCollum, supra*.

## 2. Section 8(a) is Also Unconstitutionally Vague For Several Reasons.

The Fifth Amendment to the U.S. Constitution (applicable to the states vis-à-vis the Fourteenth Amendment) provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015). This guarantee is violated when a law is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Id.* (citation omitted). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012). As the Supreme Court

---

[9] Importantly, the phrase "doing business in this state" in the FTSA is used only to define the term "telephone solicitor." This suggests the legislature elected to limit the application of ***some*** prohibitions in the FTSA to "telephone solicitors"—*i.e.,* only to businesses operating in Florida. *See, e.g.,* Fla. Stat. § 501.059(2) (requiring a telephone solicitor to identify him or herself); § 501.059(4) (prohibiting a telephone solicitor from making calls to phone numbers on the Do Not Call List). In contrast, the automated call provision in Section 8(a) expressly applies to a "person," not just a telephone solicitor—*i.e.,* no "person" may make or knowingly allow a telephonic sales call to be made through an automated system without the express written consent of the called party. Fla. Stat. § 501.059(8)(a). But "person" is not defined in the statute or otherwise limited to those doing business in or located in Florida. Thus, on its face, the Section 8(a) does not appear to be limited to calls made or received within the State, which merely underscores is extra-territorial reach and compounds the Commerce Clause violation.

aptly held, "a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).[10]

In this regard, the FTSA prohibits telephonic sales calls made using "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[.]" Fla. Stat. § 501.059(8)(a). However, Section 8(a) does not define this critical phrase or the key words in it. Worse, the FTSA's statutory language and legislative history have used various terms to describe the type of technology regulated. For example, the legislative history uses the phrases "automated machine," "automated dialer," "automatic telephone dialing system" (which is the ***TCPA's*** terminology) and "autodialer" interchangeably without consideration to possible different meanings, often conflating them into a single "technology." FIS at 1-2. Further, prior to the recent amendments, the FTSA used different phrases throughout, even in the same sections, to describe covered technology. *See* Fla. Stat. § 501.059(8)(a)-(b) (2018). Thus, it is completely unclear what technology constitutes an "automated system," it is <u>impossible</u> for callers to know whether they are using equipment regulated by the FTSA or if they must comply with the FTSA's requirements, and they can only guess at their peril as to what dialers are egal. Under the TCPA, businesses had to play this guessing game for years as courts were deeply split as to whether certain dialers were an ATDS until the Supreme Court intervened.[11] Section 8(a) now unleashes the same uncertainty, it is open to inconsistent judicial interpretations and arbitrary enforcement, and its unmitigated existence threatens to chill protected speech.

Moreover, as noted above, it is unclear whether Section 8 applies to called parties who are just visiting Florida. On its face, it prohibits any "person"—not just people or businesses doing business in Florida—from making automated calls without first obtaining consent. Fla. Stat.§ 501.059(8)(a). The statutory text does not expressly limit its application to calls received by Florida residents or calls made by Florida businesses or those doing business in the state. *See* fn. 9, *supra*. Thus, foreign companies are left to guess whether they might be subject to the FTSA's steep statutory damages if they have unwittingly call or text one of their customers vacationing in Florida or they may have to avoid making such calls altogether (nationwide), given that their customers may be visiting Florida at any given time.

In sum, Section 8(a) is also unconstitutionally (and indeed hopelessly) vague for multiple reasons, which further supports dismissal of Count III of Plaintiff's Complaint in this case.

---

[10] The due process guarantees of the Fourteenth Amendment are coextensive with those of Florida's. *See, e.g.*, *Bonavista Condo. Ass'n, Inc. v. Bystrom*, 520 So. 2d 84, 86 (Fla. 3d DCA 1988).

[11] Tellingly, other state autodialing laws provide definitions for covered technology, like the TCPA. *E.g.,* N.Y. Gen. Bus. Law § 399-p(a); 815 ILCS 305/5(a); Wash. Rev. Code § 80.36.400(1)(a).

### 3. Section 8(a) Is Also An Unconstitutional Free Speech Restriction.

*a)     Section 8(a) employs a content-based restriction on speech and, therefore, is subject to "strict scrutiny" review.*

The First Amendment, also applicable to the States through the Fourteenth Amendment, prohibits enacting any laws "'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Section 8(a) violates it. In this regard, the government generally cannot "restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). A law is considered "content-based" where "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163. This includes any laws "singl[ing] out specific subject matter for differential treatment." *Id.* at 169. For example, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.*

The United States Supreme Court has already made clear that restrictions on telemarketing which discriminate based on the call's content (which is precisely what the FTSA does) puts those restrictions at risk of being unconstitutional. Indeed, in *Barr* for example, the government-backed debt collector exception to the ATDS restrictions of the TCPA (*i.e.*, 47 U.S.C. § 227(b)(1)), which permitted automated calls to collect a government debt without consent of the called party where such calls would otherwise be unlawful, was deemed an unconstitutional content-based restriction on free speech that was not narrowly tailored to serve a compelling interest. 140 S.Ct. at 2346-47. The plurality in *Barr* held that a law that differentiates between calls based on whether the call's content is to collect a government debt "is about as content-based as it gets." *Id.* The same is true for the FTSA.

Applying these core concepts here, Section 8(a) provides "a person may not make or knowingly allow ***a telephonic sales call*** to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (emphasis added). While the FTSA does not define what this "automated system" is, which itself is an unconstitutional defect warranting dismissal as discussed above, a "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services…." Fla. Stat. § 501.059(1)(j). Thus, on its face, whether a call violates Section 8(a) rests squarely on whether it is a "telephonic sales call" to a ***consumer about consumer*** (not commercial) ***goods or services***—*i.e.*, <u>one specific</u> type of call, caller

and topic, to the exclusion of all others. As such, a debt collection call to a Florida consumer using an "automated system" without consent—which is no longer allowed under the TCPA's automated calling restrictions after *Barr*—or an "automated" political call to a Florida consumer (among other topics) is perfectly legal under the FTSA on its face. Yet, a call for the purpose of selling a consumer good or service to that same person while using the same "automated system" without consent is illegal on its face. As in *Barr*, "that is about as content-based as it gets." 140 S.Ct. at 2346-47.

Moreover, *all* "[c]ontent-based laws—those that target speech based on its communicative content [like Section 8(a) does]—are *presumptively* unconstitutional" and, as such, are subject to "strict scrutiny" review and therefore "may be justified [under the First Amendment] only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (emphasis added). *See also Int'l Outdoor, Inc. v. City of Troy,* 974 F.3d 690, 703 (6th Cir. 2020) (holding the lesser "intermediate scrutiny" standard applies <u>only</u> to laws that are content <u>neutral</u> on their face; strict scrutiny still applies to <u>all</u> content-based restrictions of <u>any kind</u>) (applying *Reed*).

In this regard, well before the recent amendments to Section 8(a), similar state calling statutes were struck down by several other federal courts applying strict scrutiny. In 2015, the Fourth Circuit invalidated a South Carolina statute prohibiting "unsolicited consumer telephone calls"—the definition of which was closely analogous to the FTSA definition of "telephonic sales calls"—and political calls. *Cahaly v. Larosa,* 796 F.3d 399, 402 (4th Cir. 2015). Applying strict scrutiny, that court struck down that part of the statute on the basis it was not narrowly tailored and "suffers from underinclusiveness because it restricts two types of robocalls—political and consumer—but permits 'unlimited proliferation' of all other types." *Id.* at 406. In 2016, a district court applied strict scrutiny and struck down a similar Arkansas state calling statute prohibiting use of an autodialer to place calls offering goods or services on the grounds that the statute was underinclusive because "no limit [wa]s placed" on other types of unwanted calls "that also may intrude on residential privacy." *Gresham v. Rutledge,* 198 F. Supp. 3d 965, 972-73 (E.D. Ark. 2016) (reasoning that "[i]f the interests of privacy and safety warrant restriction of automated calls made for a commercial purpose …, they also warrant restriction of other types of automated calls"). Then, in 2019, the Ninth Circuit applied strict scrutiny when striking down another closely-analogous Montana automated call statute. *See Victory Processing, LLC v. Fox,* 937 F.3d 1218, 1227-29 (9th Cir. 2019) (applying *Reed*). *See also Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, 553 F. Supp. 3d 1143, 1163 (S.D. Fla. 2021) (strict scrutiny applied to a content-based speech restriction in a "commercial" statute). In sum, these directly on-point authorities

show Section 8(a) is a content-based restriction properly reviewed under "strict scrutiny."

  *b)  Section 8(a) cannot survive "strict scrutiny" review.*

  To survive strict scrutiny review, the State bears the burden to "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). The State cannot meet its heavy burden here.

  Indeed, omitted from the statute itself and its legislative history is ***any*** purpose or justification ***at all*** for limiting the application of Section 8(a) of the FTSA as it is. Rather, the legislative history reflects the Florida legislature's discussion of consumer complaints about ***unwanted calls in <u>general</u>***, including calls made using an autodialer to play a recorded message and spoofed calls regardless of content, as well as unwanted telemarketing calls regardless of how they are made (*e.g.,* manual calls). However, the legislative history does not articulate the reason behind regulating ***only*** "telephonic sales calls"—rather than ***all*** calls made using an "automated system for the selection or dialing of telephone numbers"—to the exclusion of all other kinds of calls. *See* FIS at 2. Regardless, even if the Florida legislature identified a specific motivation behind limiting Section 8(a) as it did—such as concerns about protecting "consumer" privacy, preventing "automated" calls to "consumers" generally, or eliminating "unwanted" calls even if manual—the law is not narrowly tailored to serve any such interest. "A statute is narrowly tailored if it targets and eliminates ***no more than the <u>exact source of</u> the 'evil' it seeks to remedy.***" *Frisby v. Shultz*, 487 U.S. 474, 485 (1988) (emphasis added). But Section 8(a) is <u>not</u> focused on an "exact source of evil," and it is both underinclusive and overinclusive.

  The Supreme Court has held that legislation that is "underinclusive" or leaves injuries to the government's purported interest unprohibited is not narrowly tailored. *Reed*, 576 U.S. at 171-72. Thus, Section 8(a) is underinclusive, and therefore not narrowly tailored, because it still permits many types of unwanted calls. For example, Section 8(a) does not limit any other category of unwanted automated calls (like political calls made during election seasons) and still permits unwanted "telephonic sales calls" that are not made with an "automated system for the selection or dialing of telephone numbers." Further, unlike the analogous provision of the TCPA, which prohibits "***<u>any</u>*** call" made using an ATDS other than emergency calls or with the prior express consent of the called party (*see* 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added)), the FTSA prohibits <u>only</u> automated "telephonic sales calls," which is defined and limited to include <u>only</u> calls to consumers about consumer goods or services. *See* Fla. Stat. § 501.059(1)(j). Yet, calls to consumers or businesses about non-consumer goods or services,

or to businesses about consumer goods or services, utilizing the same system <u>are</u> permitted. In short, rather than prohibit <u>all</u> automated calls on <u>all</u> topics (except for emergency calls, which are undoubtedly a "compelling state interest") like other statutes do, the FTSA "singles out [telephonic sales calls about consumer goods or services] for differential treatment." *Reed,* 576 U.S. at 169. *See also Victory Processing,* 937 F.3d at 1229 (similar statute underinclusive where other unwanted calls not restricted).

Finally, in addition to its silence on restrictions for many types of unwanted automated calls (which makes it <u>under</u>inclusive), if Section 8(a) was actually motivated by consumer protection from unwanted calls, it is simultaneously <u>over</u>inclusive because it unnecessarily restricts calls consumers may have ***actually wanted or expected***. For example, a consumer could contact a business about the purchase of a consumer product and ask to be called back but not provide their "prior express written consent" within the meaning of the FTSA's definition of that term. *See* Fla. Stat. § 501.059(1)(g). The end result of this is that the consumer either does not receive a clearly desired call just because his or her consent did not meet the onerous requirements of the statute, or the business takes the risk of possibly violating the FTSA in using an "automated system" to call the consumer. Either way, these examples all show Section 8(a) is both under and overinclusive, and it does not survive strict scrutiny.

> c)      *Section 8(a) also cannot survive "intermediate scrutiny" review.*

Though strict scrutiny applies, Section 8(a) does not survive intermediate scrutiny review, either. Under that standard, speech that is "neither misleading nor related to unlawful activity" may be restricted if there is (i) a "substantial" state interest, (ii) "the regulation directly advances the governmental interest asserted" and (iii) the regulation "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). The State bears the burden of meeting this standard. *See FF Cosms. FL, Inc. v. City of Miami Beach,* 866 F.3d 1290, 1299 (11th Cir. 2017). Again, the State cannot meet its burden here, either.

As noted above, there is <u>nothing</u> in the FTSA's legislative history or the text of the statute itself suggesting the Florida legislature has articulated <u>any</u> particular interest, let alone a "substantial" interest, that the recent amendments to Section 8(a) were designed to address. In fact, there is nothing suggesting the legislature has proffered any reason for singling out and regulating only unwanted automated "telephonic sales calls" to a "consumer" about "consumer goods or services" as Section 8(a) now does, as opposed to ***all*** unwanted calls to ***any*** person on ***any*** topic. And even if there were some generalized interests in protecting consumers from unwanted automated calls, Section 8(a) is both under- and overinclusive in advancing them. Again, there are a variety of "unwanted" calls not

covered by Section 8(a) (*e.g.,* debt collection calls, scam calls, non-sales calls, political calls, and non-consumer sales calls not fitting the definition of a "telephonic sales call") that can be made in automated fashion without any consent or recourse, and a whole host of "wanted" calls are covered when they should not be (*e.g.,* where the consumer provides oral consent but not "prior express written consent").

Moreover, if the Florida legislature wanted to stop all unwanted automated calls of any kind, it could have accomplished that simply by mirroring the restrictions of the TCPA when it amended Section 8(a). Yet, that is not what Section 8(a) does. And there are <u>many</u> far less restrictive alternatives to the FTSA's restrictions—such as oral consent or providing exceptions for calls made in response to an inquiry by the consumer—that the TCPA and other state calling statutes account for and the FTSA currently does not.[12] "By ignoring far less restrictive and precise means, it is likely that [the FTSA] burdens substantially more speech than necessary." *FF Cosms.*, 866 F.3d at 1301. In short, while strict scrutiny applies, the FTSA is an unconstitutional speech restriction no matter the level of heightened scrutiny applied, and thus Count III should be dismissed under Rule 12(b)(6) on this additional basis.

> d)   *Recent non-binding decisions on the constitutionality of the FTSA in other cases do not help Plaintiff avoid dismissal in this case.*

Beautycounter anticipates that, in response to this Motion, Plaintiff will rely on at least three non-binding district court decisions (*Turizo*, *Pariseau*, and *Borges*) on the constitutionality of the FTSA, inviting this Court to forego its own <u>independent</u> analysis.[13] It should decline this invitation.

For starters, these cases have zero impact on Plaintiff's failure to plead any facts suggesting use of an "automated system" under the FTSA (*see* pp. 19-20, *infra*), the many fatal flaws with his TCPA ATDS claim (*see* pp. 5-10, *supra*), or his failure to plead a cognizable FTA claim (*see* pp. 20-20, *supra*). Regardless of the FTSA's constitutionality, the <u>entire</u> Complaint should still be dismissed on those bases. Further, none of those courts even attempted to hazard a guess as to what "automated systems" are covered by the FTSA despite declaring Section 8(a) is not vague on that basis, nor do any of them discuss the other unconstitutionally vague aspects of the statute, discussed above (*see* p. 11, *supra*). Moreover, two of those decisions (*Pariseau* and *Borges*) do not address the dormant

---

[12] In fact, recognizing the many constitutional infirmities in the current iteration, the Florida House introduced a bill that, although ultimately not passed, would have amended Section 8(a) to add some of those common exceptions that could have perhaps resolved some of the issue noted above. *See* https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c3/PDF at p. 2 (last visited Dec. 5, 2022).

[13] *See generally Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 2022 WL 2919260 (S.D. Fla. May 18, 2022); *Pariseau v. Built USA, LLC,* 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022); *Borges v. SmileDirectClub, LLC*, 2022 WL 4269564 (S.D. Fla. Sept. 15, 2022).

Commerce Clause argument presented above (*see* pp. 10-12, *supra*); and they both rely heavily, if not exclusively, on the third decision (*Turizo*), which is distinguishable, inapposite, and, respectfully, fundamentally flawed (if not wrongly-decided) in a number of key respects, as discussed below.

Indeed, in *Turizo*, the court's review was predominately preoccupied with the FTSA's preemption by the TCPA, which is not argued in this Motion. *See* 2022 WL 2919260, at *6-8. Additionally, the court's analysis in *Turizo* is flawed for at least three critical reasons: (1) it incorrectly assumed that compliance with the FTSA was sufficient to avoid dormant commerce clause implications, which avoids the critical analysis of whether the FTSA unduly burdens calls made to individuals ***wholly outside of Florida*** (and it clearly does, and is unduly burdensome on interstate commerce regardless of whether the FTSA is followed);[14] (2) it incorrectly applied the intermediate scrutiny test to evaluate the constitutionality of the FTSA, whereas ***strict scrutiny applies to all content-based burdens on speech, including commercial speech*** (*e.g., Int'l Outdoor* and *Norwegian Cruise Line*, *supra*), and it did not identify any interest ("compelling" or "substantial") articulated ***by the State*** in limiting Section 8(a) to just calls to consumers about consumer goods and services, and improperly just took the ***plaintiff's*** word for it; and (3) it sidestepped the vagueness issue by summarily concluding the dialer at issue fell into Section 8(a)'s purview based upon ***how the defendant referred to it***, not based the actual characteristics of the device itself in relation to Section 8(a)'s terms. *See* 2022 WL 2919260, at *8-12. In short, this Court should not be persuaded by these flawed decisions.

### D.   Count III Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Allege Facts Suggesting Use of a FTSA-Prohibited "Automated System."

Beyond its many constitutional failings, Plaintiff's FTSA claim in Count III should also be dismissed because Plaintiff fails to plead sufficient non-conclusory facts in support of such a claim.

As noted above, there is at least one directly on-point federal authority—the recent decision in *Davis v. Coast Dental Servs., LLC*—which is particularly instructive here and further dooms Count III to dismissal. There, the district court held that, "[t]o properly allege a violation of [Section 8(a)], a plaintiff must allege some facts making it plausible that the defendant used an automated dialing system as described by the statute." 2022 WL 4217141, at *2. Yet, the complaint in *Davis* merely alleged at best that, "'[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone

---

[14] *See also Healy*, 491 U.S. at 336 (the Commerce Clause is implicated where a statute applies to "commerce that takes place wholly outside of the State's borders" even if there is no in-state impact).

numbers." *Id*. Thus, dismissing under Rule 12(b)(6), the court held that "[t]his allegation is conclusory and the Court need not accept it as true" and that "it is merely possible that [the defendant] violated the FTSA, but not plausible as the pleading standard requires." *Id.* (citing *Chaparro* and *Iqbal*).

Here, as in *Davis*, Plaintiff's Complaint omits any factual substantiation which would suggest that Beautycounter employed a "automated system" under the FTSA or an "ATDS" under the TCPA. Indeed, Plaintiff simply concludes "[u]pon information and belief, Defendant has placed automated and/or prerecorded calls and/or text messages to cellular telephone numbers[.]" Dkt. 1, ¶ 47. Plaintiff's other allegations fare no better, and also conclude without support that Beautycounter violated the TCPA and FTSA "by using an automatic telephone dialing system and/or pre-recorded voice messages to send non-emergency text messages[.]" *Id.*, ¶¶ 59, 70. Plaintiff alleges <u>zero</u> factual basis for these.

In sum, Plaintiff's allegations regarding the purported use of an "automated system" here fall far short of meeting federal pleading standards, just as the *Davis* court held and as many other courts in this District and throughout the country have recognized when dismissing similarly-bare ATDS claims in analogous TCPA cases. *See* discussion at pp. 8-9, *supra*. This Court should rule similarly.

### E.    **Plaintiff Fails to State a Cognizable FTA Claim.**

Plaintiff's perfunctory claim under the Florida Telemarketing Act is wholly without merit. Plaintiff suggests that it is a violation of this statute "for a salesperson to send messages without prior consent." *See* Dkt. 1, ¶ 74. He is wrong. The Florida Telemarketing Act has a variety of provisions regarding licensure and disclosures which must be made during certain calls, none of which are relevant here. *See* Fla. Stat. § 501.601, *et seq.* The one section Plaintiff appears to seek to enforce are the provisions in Section 501.616, entitled "Unlawful Acts and Practices." But Plaintiff does <u>not</u> plead any facts suggesting that any of those acts or practices occurred here.[15] This warrants dismissal too.

## V.    **CONCLUSION**

For all these reasons, the entire Complaint should be dismissed under Rules 12(b)(6).[16]

---

[15] Further, with Plaintiff's federal TCPA claims properly dismissed for the myriad reasons above, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law FTSA and FTA claims under 28 U.S.C. § 1367(c). *See Grieben v. Fashion Nova, Inc.*, 2022 WL 4598649, at *6 (S.D. Fla. Sept. 29, 2022). And because all of Plaintiff's individual claims do not survive dismissal under Rule 12(b)(6) for the many reasons above, the class allegations must also be dismissed. *See, e.g., Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (collecting cases).

[16] Dismissal with prejudice is appropriate where "a more carefully drafted Complaint could not state a claim." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137 (11th Cir. 2019). Such is true here as to Count III, as Plaintiff cannot cure the facial constitutional defects of the FTSA through amendment.

Dated:  December 5, 2022

Respectfully Submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Yaniv Adar*
 Josh A. Migdal, Esq.
 Florida Bar No. 19136
 josh@markmigdal.com
 Yaniv Adar, Esq.
 Florida Bar No. 63804
 yaniv@markmigdal.com
 eservice@markmigdal.com

*Attorneys for Defendant Counter Brands, LLC*
*d/b/a Beautycounter*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that, on December 5, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

/s/ Yaniv Adar

Yaniv Adar